(89 App. Div. 108.)

FLANIGAN v. SKELLY et al.

(Supreme Court, Appellate Division, Third Department. December 1, 1903.)

1. EQUITY—FRAUD—SETTING ASIDE CONVEYANCE—WITHDRAWAL FROM JURY.
    It is not error for the court, in an equitable action to set aside a conveyance procured by fraud, to refuse to send any question to the jury.
2. SAME—FINDINGS BY COURT.
    In an action to set aside a conveyance procured by fraud, being an equity case, the court should make findings of fact, and embody its conclusion in a written decision.
3. SAME—EVIDENCE—QUESTION OF FACT.
    Evidence *held* to present a question of fact, whether a grantee procured a conveyance of land by fraud.
4. SAME—HOLDER WITHOUT NOTICE—INADEQUATE CONSIDERATION.
    Where a conveyance of land worth $6,300 was secured by fraud, and the land afterwards conveyed to the grantee's wife without notice of the fraud, who mortgaged it to another to procure part of the price, and the combined amount paid by the wife and the mortgagee was only $2,375, the original conveyance should be set aside, but the land left subject to their equities for that amount.
5. TRIAL BY JURY—DIRECTION TO DISMISS—APPEAL.
    Where an action to set aside a conveyance procured by fraud was improperly tried by jury, and the court directed a dismissal of the complaint, but made no written decision, and there was evidence raising a question of fact as to the fraud, the judgment will be reversed, where the court may have acted on a wrong theory of the law as to the effect of the fraud; it not appearing that the court has considered the question of fact in directing the dismissal.

Appeal from Trial Term.

Action by Eugene D. Flanigan, committee of Michael A. Skelly, an incompetent, against John Skelly and others. From a judgment in favor of defendants, plaintiff appeals. Reversed.

The action is brought to rescind and set aside a conveyance executed by Michael A. Skelly to his brother John J. Skelly, on April 15, 1893, of certain premises in the city of Albany, and also certain subsequent conveyances of such premises, and of a portion thereof, and of a certain mortgage for $2,000 now existing thereon. On July 15, 1894, Michael was committed to an insane asylum as hopelessly insane, and has ever since remained therein. The grantee, John J. Skelly, held the deed without recording it until July 25, 1899. He then caused it to be put on record, and the conveyances and mortgages thereof were made subsequently thereto. Prior to July 25, 1899, John J. Skelly seems to have collected rents from the premises, and stated that he did so for his insane brother; but about that date he put a mortgage upon them to one Dollard to secure the payment of $2,315, payable

¶ 1. See Jury, vol. 31, Cent. Dig. § 71.

on demand. On September 2, 1899, proceedings to foreclose that mortgage were commenced, and on November 24, 1899, they were sold under judgment of foreclosure and sale to Annie Skelly, the wife of John J. Skelly, for $2,375. On the same day she executed a mortgage to one Mary Redmond for $2,000 upon the same premises, which mortgage is still outstanding. On December 20, 1899, she also conveyed a portion of the premises to the defendant Mary McInerny. The grantee, John J. Skelly, was made a party defendant in this action. He made default in pleading, and has since died. Certain other of the defendants, who are mere tenants of the premises, have also made default; and the only parties answering are the said Annie Skelly, Mary Redmond, and Mary McInerny. The action was tried at a trial term before a justice of this court and a jury. After the plaintiff had closed his evidence, the court, on motion of the defendants, dismissed the complaint against all the defendants, with costs, and from the judgment entered thereon this appeal is taken.

Argued before PARKER, P. J., and SMITH, CHASE, CHESTER, and HOUGHTON, JJ.

Mark Cohn (Eugene D. Flanigan, of counsel), for appellant.

Charles Irving Oliver and Harold B. Alexander, for respondents Annie Skelly and Mary McInerny.

William W. R. Erving, for respondent John Commerford, as executor of Mary Redmond.

PARKER, P. J. Two grounds are stated in the complaint as reasons for rescinding the conveyance from Michael A. Skelly to his brother John—one, that Michael was insane at the time; the other, that, if not then sufficiently insane to avoid his act, he was, owing to his drunken and imbecile condition, cheated and defrauded into executing and acknowledging a conveyance without any consideration for the property.

It is to be noticed that the action is one in equity, and that no issues of fact have ever been framed to be submitted to a jury. Although a jury seems to have been called and sworn on the trial, nevertheless it was triable only before the court; and the jury must be deemed to have been in attendance only for the purpose of aiding the court, should it desire to submit any question of fact to them. Correct practice, therefore, required that whatever judgment was rendered must be entered on the decision of the court, and not on any verdict of the jury. The court has signed no decision whatever. After hearing the plaintiff's evidence, it directed that his complaint be dismissed, and the clerk thereupon entered judgment to that effect against all the defendants.

It was no error for the court to refuse to send any question to the jury, although the plaintiff's counsel urged it to do so; but, unless it was a case in which there was no evidence whatever tending to establish a right to the relief, or to some part thereof, which the plaintiff asked for, the court should have passed upon such questions of fact, and embodied its conclusion in a written decision. The judgment, therefore, is no more than one of nonsuit against all the defendants, and the question is whether such an one should have been entered.

I am of the opinion that the evidence fails to establish that on April 15, 1893, Michael A. Skelly was so far insane that his mental condition

was sufficient to avoid his acts. So far as that question alone is concerned, he should have been nonsuited. But as to the question whether he was not defrauded out of his property by his brother John, I am of the opinion that the evidence presented a question of fact which it was incumbent for the court to pass upon. There are many facts shown indicating that the conveyance from Michael to John was not an honest transaction. Notably, the ostensible consideration was but $1,500, while the testimony shows the property to have been worth upwards of $6,000. So John, until after Michael was taken to the asylum and the uncle was dead, did not make any claim to, nor attempt to use, the property at all, and even after that did not record such deed until about six years after it was given, and as late as 1896 or 1897 stated that he was collecting for Michael, and that it was all his. Also the very great doubt, under the evidence, as to whether John had any money whatever with which to pay Michael anything for the property, and the concededly drunken and imbecile condition in which Michael was almost constantly at the time he is said to have given the deed, and the ease with which he could have been induced to subscribe and acknowledge the same under a false pretense. It is not necessary to detail all the various circumstances that suggest a fraudulent procurement of that conveyance by John. It seems to me that there was clearly enough to require a trial court to weigh the evidence, and pass upon the merits of the question so presented, and particularly as John himself, by not answering, admitted that as to himself the charges so made were true.

But the question remains. has reversible error been committed by not so doing? If the plaintiff had been entitled to have the jury decide that question, clearly it would have been error to take it from them. But as above shown, the trial justice was the one to determine that question; and evidently, by deciding that there was not evidence enough to prevent a nonsuit, he has determined that there was not enough evidence to sustain a finding of fraud against John, provided he has taken that question at all under consideration. But he may have argued that, even though Michael was defrauded out of the land, yet, inasmuch as Annie Skelly was a bona fide purchaser for value, she had acquired a good title by the foreclosure sale, and that hence it was too late for Michael or his representative to claim anything through a rescission of his contract of conveyance. I am of the opinion, however, that such reasoning is not entirely correct. As the case stands before us, we should assume, I think, that the property is worth $6,300, or thereabouts. John has never conveyed the property to any one. He mortgaged it to Dollard for $2,315. The defendant Annie Skelly acquired Dollard's interest, and also John's equity of redemption, upon foreclosure of such mortgage, but paid only $2,375 for both; that is, she paid nothing for his equity of redemption. In order to pay that $2,375, she borrowed on the Redmond mortgage, which is still outstanding, $2,000. So that the whole interest which Mrs. Redmond and Annie Skelly have put into the property is but $2,375 cash, and the rest of Annie Skelly's interest therein is the equity of redemption, which she acquired for nothing. Thus it appears that property to the amount of $6,300, incumbered by a mort-

gage to Mrs. Redmond for $2,000, has been acquired by Annie Skelly, who now holds the title to the same, for the sum of $375. In an action to rescind a conveyance procured by the fraud of John Skelly, does his wife, Annie, thus stand in such a situation that she has a superior equity to the defrauded grantor, even though it be conceded that she had no knowledge of the fraudulent character of the conveyance to John? I am of the opinion that in such a case, when the price which she paid is so inconsiderable, compared with the amount which she acquired, the amount which she put into the property is the extent of the equity which should be protected to her. Of course, the lien of Mrs. Redmond's mortgage is also a superior equity, which should be protected. As to Mary McInerny's interest, it seems that she acquired it from Annie Skelly for $1, and therefore does not now appear to be a bona fide holder for value.

There seems to be no reason, therefore, for denying to this plaintiff, as equitable relief, provided the court becomes satisfied that Michael Skelly was defrauded out of his property, a rescission of the contract and a reconveyance of the property, subject to the lien of the Redmond mortgage, and to such pecuniary interest therein as it shall appear Annie Skelly has paid or advanced upon the same.

In this view of the case, it becomes important to determine whether the fraud claimed in the complaint to have been perpetrated by John was actually committed. There is nothing in this record by which we can determine that the court has pased upon that question. From the evidence before us, I am of the opinion that, if it had so found, the equities of the parties should be adjusted as above suggested; and therefore the judgment herein must be reversed, and a new trial granted, with costs to the appellant to abide the event. All concur.